IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Esteban M. Weber, #279818, ) | |
| ) | C/A No.: 2:04-2405-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michael Stephan; John Parrish; Timothy ) | **OPINION AND ORDER** |
| McCoy; Herman Wright; FNU Smalls; ) | |
| FNU Carey; FNU Mackey; FNU Maxey; ) | |
| FNU Cantey; FNU Thomas; John Doe, ) | |
| sued in their individual capacities; ) | |
| Robert S. Ward; ad William White, sued ) | |
| in their individual and official capacities; ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Esteban M. Weber is an inmate of the South Carolina Department of Corrections (SCDC) currently housed at McCormick Correctional Institution in McCormick, South Carolina. At the time of the underlying events, Plaintiff was incarcerated at Broad River Correctional Institution (BRCI) in Columbia, South Carolina. Defendants are or were employees of SCDC. Plaintiff, proceeding *pro se*, brings this action against Defendants pursuant to 42 U.S.C. § 1983, asserting that his Eighth Amendment rights have been violated in various respects.

This matter is before the court on Defendants' motion for summary judgment filed January 31, 2005. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Robert S. Carr for a Report and Recommendation. On February 8, 2005, the Magistrate Judge issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to Defendants' motion for summary judgment on April 27, 2005. On July 12, 2005, the Magistrate Judge issued a Report

and Recommendation in which he recommended that Defendants' motion for summary judgment be granted because Plaintiff has not demonstrated that "he suffered any, or at least, more than a [de minimis] injury as a result of" the events alleged in the complaint. Plaintiff filed objections to the Report and Recommendation on August 5, 2005.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a de novo review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

The court has reviewed the Report and Recommendation, objections, pleadings, memoranda, affidavits, and exhibits of record in this case. The court concludes that Defendants' motion for summary judgment should be granted.

## I. FACTS

On September 11, 2002, Plaintiff commenced a "political hunger strike." Complaint, p. 5 (numbered p. 3). On September 26, 2002, medical personnel recommended that Plaintiff be transferred to Kirkland Infirmary for observation. Prior to the transfer, Plaintiff was housed "on the Bravo side of Broad River's SMU (Special Management Unit) amongst prisoners medically proven

to be HIV/AIDS positive." Id., p. 6 (first page numbered 4). The next day Plaintiff was transferred to Kirkland Infirmary. On October 2, 2002, Plaintiff was returned to BRCI. According to Plaintiff, he was placed in a cell with "feces smeared all over the walls, floor, and sleeping area." Id. Plaintiff contends he was "forced to clean the cell with a mop bucket full of hot water, with no chemicals or gloves." Id., p. 7 (second page numbered 4). Plaintiff asserts that he was "stripped and wrongfully touched on his groin area, given the justification that, quote 'you could have some contraband down here[.]'" Id., p. 8 (second page numbered 3). According to Plaintiff, clothes were not approved for him and he was "forced to endure filthy and frigid tempratures [*sic*], chemical munition side-effects, while laying naked on cold, hard concrete." Id.

Plaintiff asserts that on October 6, 2002[1] he was told he was going to be taken to Gilliam Psychiatric Hospital to have his vital signs checked.[2] Plaintiff "at that time was extremely cold and not thinking to [*sic*] clear so plaintiff refused[.]" Id., p. 9 (third page numbered 4). Plaintiff contends that he was subjected to excessive blasts of chemical munitions.[3] Later that day, "an extraction team entered Plaintiff's cell, hitting Plaintiff violently with a protective assault shield, then restrained Plaintiff and escorted him off of Bravo side, naked." Id.. Plaintiff was transported to Gilliam

---

[1] Defendants' records indicate the correct date is October 8, 2002.

[2] Medical records submitted by Plaintiff indicate he was admitted to Gilliam Psychiatric Hospital for allegedly threatening suicide. According to a discharge summary, Plaintiff admitted making the comment that "'I might as well be dead if you all are going to treat me this way.' This apparently was in reference to being placed on lock-up in regard to a political protest and a refusal to eat or have his hair and beard trimmed." Memorandum of Law In Opposition to Defendants Motion for Summary Judgment (Entry 76), Discharge Summary Bates No. 6598.0159 A.

[3] The record indicates that on October 8, 2002 and October 30, 2002 Plaintiff was administered MK-IX CS Mace Fogger Spray. Memorandum of Law In Opposition to Defendants Motion for Summary Judgment (Entry 76), Bates Nos. 6598.0081 A and 6598.0082 A.

3

Psychiatric Hospital, where he received a paper gown and a shower. Plaintiff contends that "the skin on his face, chest, arms, and groin was red and peeling do [*sic*] to the excessive chemical munition discharges." Id., p 10. (third page numbered 3).

Plaintiff was transferred back to BRCI on October 23, 2002. Plaintiff alleges that on October 25, 2002[4] he was shoved into a holding cell after being ejected from a disciplinary hearing. Plaintiff asserts he was restrained, his clothes cut off, and he was placed in a paper gown. He was escorted to a cell where "mentally unstable now as to the punishment, Plaintiff flooded his cell[.]" Id., p. 12 (unnumbered). Plaintiff contends that:

> By this time Plaintiff was completely off balance and was not allowed to speak to mental health so Plaintiff listened to advice from an inmate who told Plaintiff that if he smeared feces all over himself Plaintiff would be able to see someone. Being as Plaintiff had not eaten, the inmate down the hall deficated [*sic*] in a bag and sent it to Plaintiff where Plaintiff began smearing it on his face, arms, and chest. The inmate then alerted [an officer who] alleged in his incident report that he observed Plaintiff ingesting some feces. However, Plaintiff is not sure if that happened or not.

Id.

Plaintiff alleges that the following day he was again subjected to chemical munitions and never allowed to remove the munitions from his skin. He further contends that on October 31, 2002, he "psychologically broke down to the point of attempting to end his life. Plaintiff was given a razor by an inmate and proceeded to slash himself across the midsection 16 times and by this time was broken to the point of ending his hungerstrike." Id., p. 13 (unnumbered). Based on these allegations, Plaintiff contends that "you have: use of force, denial of medical and mental treatment, exposure to life threatening conditions, exposure to unsafe living conditions that could lead to long term damage (HIV/AIDS), abuse of authority, security unlawfully overriding medical instructions, and unlawful

---

[4] Defendants' records indicate the correct date is October 29, 2002.

stripping." Id., p. 14 (unnumbered).

## II. DISCUSSION

Plaintiff asserts the Magistrate Judge erred in concluding that Plaintiff cannot state either an excessive force claim or a claim for denial of medical care because his injuries were de minimis. The court disagrees.

As a general proposition, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (citing Hudson v. McMillan, 503 U.S. 1 (1992)). Similarly, in order to establish a prima facie case under the Eighth Amendment for denial of medical care, Plaintiff must show that the harm suffered was "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). At a minimum, an inmate must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition. Strickler v. Walters, 989 F.2d 1375, 1981 n.9 (4th Cir. 1993).

With respect to physical injury, Plaintiff contends that he "had problems with his respiratory system and the skin on his face, chest, arms and groin turned red and pealed [*sic*]." Objections to Report and Recommendation (Entry 84), p. 5. In the court's view, the physical injuries described by Plaintiff are not of constitutional significance. There is no foundation in the record for a finding

that Plaintiff suffered any long-term effects from the chemical munitions. Moreover, the court has reviewed a videotape of the October 8, 2002 incident. It appears that Plaintiff refused three times to submit to restraints in preparation for being transported to Gilliam Psychiatric Hospital. On each occasion Plaintiff was subjected to chemical munitions. After he refused a third time, a team of correctional officers was required to forcibly restrain Plaintiff and remove him from his cell. "'It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere.'" Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980 (quoting Sewell v. Pegelow, 291 F.2d 196, 197 (4th Cir. 1961)). Plaintiff's objection is without merit.

Plaintiff further contends in his objections that he suffered psychological injury, physical pain, degradation, and sexual humiliation as the result of Defendants' actions. Title 42 of the United States Code, Section 1997e provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." As noted hereinabove, Plaintiff has failed to demonstrate physical injury. Plaintiff's objection is without merit.

Plaintiff contends that his being housed with HIV/AIDS-positive prisoners, smearing of feces "from an unknown prisoner" over himself, ingesting feces "that he does not remember," and slashing himself with a razor, see Objections to Report and Recommendation, p. 7, could result in his testing positive for HIV/AIDS. The chance of Plaintiff becoming HIV positive in the future is too speculative to create a valid case or controversy. Plaintiff's objection is without merit.

To the extent that Plaintiff complains about the conditions of his confinement, the court concurs with the Magistrate Judge's conclusions that such complaints must fail. As the Magistrate

Judge properly noted, a prisoner must prove (1) objectively that the deprivation of a basic human need was sufficiently serious, and (2) subjectively that the prison officials acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). In this case, the record supports a finding that Plaintiff was placed in a special management unit and given a paper gown in lieu of conventional clothing to wear for his own safety because of his suicidal behavior. Progress Notes submitted by Plaintiff indicate that he was monitored almost daily by medical personnel during his hunger strike. His superficial lacerations were cleaned and treated with antibiotic ointment to prevent infection. He was allowed to shower or wash off in his cell after smearing himself with feces. <u>See</u> Memorandum of Law in Opposition to Defendants Motion for Summary Judgment (Entry 76), Progress Notes Stamped 6598.0209 A through 6598.0131 A. The record belies any finding that Plaintiff was subjected to inhumane treatment by prison officials acting with a "sufficiently culpable state of mind." <u>Wilson</u>, 501 U.S. at 298. Plaintiff's objection is without merit.

### III. CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated in the Report and Recommendation and hereinabove, Defendants' motion for summary judgment is **granted** and the case **dismissed**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 14, 2005.

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.